FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 08, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LOURENCE D., <br><br> Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO, <br> Commissioner of Social Security, <br><br> Defendant. | NO. 2:25-CV-0364-TOR <br><br> ORDER OF REVERSAL AND REMAND |

BEFORE THE COURT is Plaintiff's Motion for judicial review of Defendant's denial of his Title II application for benefits under the Social Security Act (ECF No. 12). This matter was submitted for consideration without oral argument. The Court has reviewed the record and files herein and is fully informed. For the reasons discussed below, Defendant's denial of his application for Title II benefits under the Social Security Act is REVERSED AND REMANDED for further proceedings.

/

ORDER OF REVERSAL AND REMAND ~ 1

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g), 1383(C)(3).

## STANDARD OF REVIEW

It is the administrative law judge's ("ALJ") job to "determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014)). The Court will affirm the Commissioner's decision to deny benefits unless it "is not supported by substantial evidence or is based on legal error." *Lambert*, 980 F.3d at 1277 (quoting *Treichler*, 775 F.3d at 1098 (internal quotations omitted). On that note, it is important for the ALJ to provide sufficient reasons for the court to review the basis of an administrative order and to identify where in the record those reasons are reflected. *Lambert*, 980 F.3d at 1277 (quoting *Treichler*, 775 F.3d at 1098).

The Court reviews the agency's findings to determine whether they are supported with substantial evidence. *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019); 42 U.S.C. § 405(g). In this context, the threshold is not high. *Biestek*, 587 U.S. at 103. Substantial evidence is present when there is "more than a mere scintilla." *Biestek*, 587 U.S. at 103 (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In other words, "such relevant evidence as a reasonable

ORDER OF REVERSAL AND REMAND ~ 2

mind might accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 103 (quoting *Consol. Edison Co. of New York*, 305 U.S. at 229).

The Court will not reverse for errors that are harmless. *Molina v. Astrue*, 674 F.3d 1104, 1117 (9th Cir. 2012). An error is harmless if it is "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (quoting *Carmickle v. Comm'r of Soc. Sec. Admin.,* 533 F.3d 1155, 1162 (9th Cir. 2008)). To effectuate this, the Court reviews the record as a whole to determine whether the error altered the result of the case. *Molina*, 674 F.3d at 1115.

## FIVE STEP SEQUENTIAL EVALUATION PROCESS

The Commissioner uses a five-step sequential process to decide whether a claimant is considered disabled. 20 C.F.R. § 404.1520(a)(1). The Commissioner considers all evidence in the record to make this determination. 20 C.F.R. § 404.1520(a)(3). Disability is defined "as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). This requires a severe impairment that makes the claimant unable to complete the claimant's past relevant work or any other substantial gainful work. 20 C.F.R. § 404.1505(a).

At each step, the Commissioner may find a claimant either not disabled or

ORDER OF REVERSAL AND REMAND ~ 3

disabled.  20 C.F.R. § 404.1520(a)(4).  If the claimant is found disabled then the process stops and the determination is made.  20 C.F.R. § 404.1520(a)(4).  However, step three to four, the Commissioner assesses residual function capacity ("RFC").  *Id.*  Then steps four and five the Commissioner evaluates the claimant's claim.  *Id.*

At step one, the Commissioner considers the claimant's work activity and if the Commissioner decides that the claimant is doing substantial gainful activity, then the Commissioner will find the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(i).  Substantial gainful activity is both substantial and gainful work activity.  20 C.F.R. § 404.1572.  Substantial work activity means "doing significant physical or mental activities" and may be done on a part-time basis, with less pay, or less responsibility than before.  20 C.F.R. § 404.1572(a).  Gainful work activity is work done for pay or profit even if the profit is not realized.  20 C.F.R. § 404.1572(b).  Put together, "Substantial gainful activity means work that—(a) [i]nvolves doing significant and productive physical or mental duties; and (b) [i]s done (or intended) for pay or profit."  20 C.F.R. § 404.1510.

At step two, the Commissioner considers the claimant's medical severity of the claimant's impairment(s).  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant does not have either a physical or mental impairment that is severely medically determinable, or a combination of impairments satisfying the requirements the

ORDER OF REVERSAL AND REMAND ~ 4

Commissioner will deem the claimant as not disabled. 20 C.F.R. § 404.1520(a)(4)(ii).

At step three, the Commissioner continues to consider the claimant's medical severity of claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant falls under one of the listings in appendix 1 and fulfills this subpart and the durational requirement, then the Commissioner will determine the claimant as disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

At step four, the Commissioner shifts to address the claimant's RFC and work experience to see whether the claimant can make an adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(iv). If the Commissioner decides that the claimant can still complete past relevant work, then the Commissioner rules the claimant as not disabled. 20 C.F.R. § 404.1520(a)(4)(iv).

At step five, the Commissioner continues to review the claimant's residual functional capacity with the claimant's age, education and work experience to settle on any possible adjustments to other work. 20 C.F.R. § 404.1520(a)(4)(v). If this is possible, then the Commissioner will rule that the claimant is not disabled. However, if the Commissioner establishes the opposite, then the claimant is deemed as disabled. 20 C.F.R. § 404.1520(a)(4)(v).

Once a claimant proves that: "(1) that she is not presently engaged in a substantial gainful activity; (2) that her disability is severe, and (3) that her

ORDER OF REVERSAL AND REMAND ~ 5

impairment meets or equals one of the specific impairments described in the regulations", then the claimant must be found disabled. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007) (quoting *Thomas v. Barnhart,* 278 F.3d 947, 955 (9th Cir. 2002)).  However, if the stated impairment does not meet the requirement listed in the regulations, the claimant may "still establish a prima facie case of disability by proving at step four that 'in addition to the first two requirements, ... she is not able to perform any work that she has done in the past.'" *Hoopai*, 499 F.3d at 1074 (quoting *Thomas,* 278 F.3d at 955).  After the claimant establishes their prima facie case at step five, the burden shifts to the agency to prove that "the claimant can perform a significant number of other jobs in the national economy." *Hoopai*, 499 F.3d at 1074–75 (quoting *Thomas,* 278 F.3d at 955).

## ALJ FINDINGS

On January 9, 2023, Plaintiff filed a Title II application for Disability Insurance Benefits under the Social Security Act ("SSA").  ECF No. 12 at 2; Tr. 17.  The claimant alleged the onset of his disability was March 15, 2021.  ECF No. 12 at 2; Tr. 17.  The application was initially denied on June 23, 2025, and denied for reconsideration on August 28, 2025.  ECF No. 12 at 2; Tr. 17.

At step one, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since the alleged onset date.  Tr. 19.  Plaintiff had severe impairments including: "bilateral total knee replacements with residuals,

ORDER OF REVERSAL AND REMAND ~ 6

degenerative disc disease; obesity; posttraumatic stress disorder; and substance abuse." Tr. 19.  While the record displays evidence of sleep apnea, the ALJ decided that this was a nonsevere impairment.  Tr. 20.

At step two, the ALJ decided that Plaintiff did not have an impairment or combination of impairments that meets the severity of those listed in 20 C.F.R. Part 404 Subpart P, Appendix 1.  Tr. 20.  The ALJ determined the same outcome regarding Plaintiff's alleged mental impairments.  Tr. 21.  The ALJ found Plaintiff did not have a limitation in understanding, remembering or applying information, interacting with others, or adapting or managing oneself.  Tr. 22.  However, the ALJ found that Plaintiff had a moderate limitation regarding concentrating, persisting or maintaining pace.  *Id.*  Plaintiff did not demonstrate either two marked limitations or one extreme limitation to meet Paragraph B criteria.  Tr. 23.  Moreover, the ALJ did not find any evidence to consider Paragraph C criteria.  *Id.*

At step four, the ALJ determined that Plaintiff's RFC included the ability

> to perform light work as defined in 20 CFR 404.1567(b) except he can occasionally climb ramps and/or stairs, and he can occasionally stoop, kneel, crouch, and crawl. The claimant can frequently balance, but he cannot climb ladders, ropes, or scaffolds. The claimant can understand, remember, and carry out detailed tasks.

Tr. 23.  Additionally, the ALJ found that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms but does not find that Plaintiff's statements regarding the intensity, persistence and limiting effects of the symptoms

ORDER OF REVERSAL AND REMAND ~ 7

are consistent with the record and evidence.  Tr. 24.

At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, that there are jobs in the national economy in significant numbers that Plaintiff can perform.  Tr. 30.  Some of these jobs include storage rental clerk, cashier II, and cafeteria attendant.  Tr. 31.

## ISSUES

Plaintiff assigns three issues to the ALJ's decision on Plaintiff's denial of Title II Social Security Disability Insurance Benefits.  ECF No. 12 at 1-2.

I.      Whether the ALJ improperly rejected Plaintiff's symptom testimony because the ALJ failed to provide specific clear and convincing reasons supported with substantial evidence.

II.     Whether the ALJ failed to provide sufficient reasons supported with substantial evidence for finding Shannon Terry, A.R.N.P.'s opinion as unpersuasive.

III.    Whether the ALJ neglected to make a required finding about Plaintiff's request to amend his alleged onset date.

ECF No. 12 at 1-2.  Plaintiff requests reversal and remand for further administrative proceedings to reconsider Plaintiff's alleged symptoms and limitations, reconsider the medical opinions, provide findings regarding Plaintiff's amended onset date, and issue a new decision.  ECF No. 12 at 2.

ORDER OF REVERSAL AND REMAND ~ 8

# DISCUSSION

## I.    The ALJ improperly rejected Plaintiff's symptom testimony and failed to provide specific clear and convincing reasons supported with substantial evidence.

"'The credibility determination is exclusively the ALJ's to make,' and '[w]e are constrained to review the reasons the ALJ asserts.'" *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)) (citation modified).  When the ALJ determines the credibility of a claimant's subjective testimony, the ALJ uses a two-step process.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The first step requires the ALJ to "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Vasquez*, 572 F.3d at 591 (quoting *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035–36 (9th Cir. 2007)).  The claimant only needs to "show that it could reasonably have caused some degree of the symptom."  *Vasquez*, 572 F.3d at 591 (quoting *Lingenfelter,* 504 F.3d at 1035–36).

The second step states when the ALJ

> determines that a claimant for Social Security benefits is not malingering and has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms [he] alleges, the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so.

ORDER OF REVERSAL AND REMAND ~ 9

*Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 488–89 (9th Cir. 2015)) (citations omitted). "The clear and convincing standard is the most demanding required in Social Security cases." *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014)).

Pursuant to this, the ALJ must "specifically identify the testimony [from a claimant] she or he finds not to be credible and ... explain what evidence undermines that testimony." *Lambert*, 980 F.3d at 1277 (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014)) (citations omitted). Determining the credibility of a claimant's testimony about the severity of symptoms allows considerations including things such as:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). However, "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

The ALJ did not find any malingering. Plaintiff alleges that the ALJ failed

ORDER OF REVERSAL AND REMAND ~ 10

to provide clear and convincing reasons to reject Plaintiff's testimony.  ECF No. 12 at 4-5.

A. <u>Sleep Apnea</u>

Plaintiff states that the substantial evidence does not support a finding that Plaintiff's sleep apnea does not cause significant limitations because it is effectively treated with a CPAP machine.  ECF No. 12 at 4, 12 (citing Tr. 20, 1766).  Plaintiff notes that he struggled to use it consistently.  ECF No. 12 at 4 (citing Tr. 61).  Defendant argues that Plaintiff states Defendant's inconsistency to complete treatment does not show the treatment is ineffective or provide support for Plaintiff.  ECF No. 17 at 5-6.  Plaintiff responds that the evidence the ALJ cited to regarding the CPAP machine was a year and half after his alleged onset date and that it being "stable" only means it was not worsening.  ECF No. 18 at 8.  Lastly, Plaintiff states that Defendant uses post-hoc rationalizations regarding compliance issues that were not provided in the ALJ's decision.  ECF No. 18 at 9.

The ALJ held that sleep apnea was not a severe impairment.  Tr. 20.  The ALJ cited 20 C.F.R. § 404.1520(c) to explain that an impairment is severe if it is expected to result in death or last for twelve consecutive months and significantly limit the claimant's physical or mental ability to perform basic work tasks.  Tr. 20.  The ALJ stated that Plaintiff did not show that this impairment resulted in a limitation that met the durational requirement.  Tr. 20.  Additionally, the ALJ

ORDER OF REVERSAL AND REMAND ~ 11

stated that it was effectively treated with a CPAP. *Id.* The ALJ then expresses that it considered all the evidence and opinions to determine that it did not significantly impair Plaintiff's ability to perform basic work activities. *Id.* The ALJ references a few sections of the same exhibit. Tr. 20 (citing Tr. 1766, 1776, 1904).

In a report from May 29, 2024, it is noted that Plaintiff has not been on a device for more than two years and was provided with a new CPAP machine. Tr. 1766. Under Plaintiff's problem list, obstructive sleep apnea syndrome is listed as active and last updated and reviewed on September 24, 2020. Tr. 1776. Under another list, this was listed as diagnosed on May 29, 2024, and last reviewed on the same date. Tr. 1904.

Plaintiff responds that the ALJ ignored opposing evidence. ECF No. 12 at 13. Plaintiff cites that Plaintiff reported to a provider in August 2022 that his CPAP machine was not effective. ECF No. 12 at 14; Tr. 1770. In this report, the provider stated that Plaintiff reported using the CPAP machine every night. Tr. 1770.

Additionally, in March of 2023, a nurse stated that Plaintiff could not adjust his machine and that Nurse Terry believed a new sleep study was appropriate. Tr. 1649. In December of 2023, Nurse Terry stated that Plaintiff reported excessive daytime sleepiness and claimed he was struggling to keep his CPAP mask on. Tr. 1037. Plaintiff reported difficulty sleeping and waking up frequently in the night.

ORDER OF REVERSAL AND REMAND ~ 12

Tr. 1037.  Plaintiff states that there is a lot of pressure and he unintentionally takes his mask off while he is sleeping.  Tr. 1037.  In January of 2023, Plaintiff told his provider that his mask was not working well.  Tr. 1643.  In April of 2024, Plaintiff's record reported that his sleep apnea was stable with his new CPAP machine.  Tr. 1336.

Plaintiff states that the ALJ's reasoning that Plaintiff did not meet the durational requirement was unclear.  ECF No. 12 at 12-13.  The ALJ stated that any impairment did not last as required by the durational requirement.  Tr. 20.  While the ALJ should have elaborated on how this impairment did not meet the durational requirement, the reason is clear.  His sleep apnea was not expected to result in death or last for 12 consecutive months causing a significant limitation to perform basic work tasks.  While Plaintiff provides support that the CPAP machine was not consistently useful or treated his sleep apnea, this does not show a significant limitation to perform basic work tasks.  Plaintiff only cites one symptom of daytime sleepiness.  Tr. 1037.  This does not negate the ALJ's determination that it does not meet the durational requirement.

B. Daily Activities

Plaintiff claims that the use of Plaintiff's alleged daily activities was improper because the ALJ did not identify an inconsistency.  ECF No. 12 at 5 (citing Tr. 24; 27).  Plaintiff continues that the ALJ improperly relied on "unremarkable activities

ORDER OF REVERSAL AND REMAND ~ 13

of daily living" that were not contradictory or exhibited fulltime work at a light exertion level. ECF No. 12 at 6. Additionally, the ALJ did not provide explanations for her reasoning or how the citation is applicable. ECF No. 12 at 6. Defendant responds that Plaintiff alleged the ALJ accurately discredited Plaintiff's testimony.

The ALJ provided many statements from Plaintiff that the ALJ alleged were contradictory to his alleged symptoms and limitations. Tr. 24. Plaintiff alleges that he "experiences pain and extremity numbness; is easily distracted; becomes anxious when performing even simple tasks; and cannot work." *Id.* Plaintiff stated that "he can only pay attention for five to ten minutes at a time; does not handle stress or changes in routine well; and can only walk fifty feet at a time on a bad day (Ex. 4E)." *Id.* Finally, Plaintiff stated that he had issues with "lifting; squatting; bending; standing; reaching; sitting; kneeling; climbing stairs; using his hands; remembering; completing tasks; concentrating understanding; following instructions; and getting alone with other (Ex. 4E)." Tr. 24.

However, the ALJ recognized inconsistencies with Plaintiff's allegations of symptoms because Plaintiff cares for his service dog and hygiene, prepares meals, makes his bed and washes laundry. *Id.* Plaintiff states he drives, shops, socializes via text message, uses a computer and pays bills. Tr. 24. Plaintiff also could lift a gallon of milk. *Id.*

ORDER OF REVERSAL AND REMAND ~ 14

The ALJ stated that Plaintiff's daily activities show that he is not as limited as Plaintiff suggests. Tr. 27. The ALJ reports Plaintiff's "attending to his personal; preparing simple meals; washing laundry socializing via text messages; driving; caring for a service dog; shopping; using a computer; and paying bills (Ex. 43)." *Id.* The ALJ asserted that his RFC determination supported his limitations. Tr. 27. The ALJ supports this stating that Plaintiff's BMI is above the obesity threshold, he had normal range of motion, intact cranial nerves, motor functions, sensations, and coordination with no acute distress on multiple occasions. Tr. 27, 1028, 1048, 1053.

The Ninth Circuit has continuously clarified "that a plaintiff has carried on certain daily activities ... does not in any way detract from her credibility as to her overall disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2001)). However, if the ALJ uses daily activities to discredit plaintiff's testimony the ALJ should find that plaintiff spends "'a substantial part of his day engaged in' those activities and that those activities entailed 'physical functions that are transferable to a work setting.'" *Contreras v. Saul*, 477 F. Supp. 3d 1107, 1126 (S.D. Cal. 2020) (quoting *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)).

The ALJ's explanation does not establish many actual inconsistencies with Plaintiff's claims. The ability to carry milk only appears to contradict Plaintiff's

ORDER OF REVERSAL AND REMAND ~ 15

claim that he has difficulty lifting. Tr. 24. The ability to engage in simple daily tasks only appears to directly contradict Plaintiff's claim that he is unable to complete tasks. Tr. 24. The ALJ does not provide explanation of how these activities contradict his symptom allegations and the Court may not consider reasons that are not set forth in the ALJ's decision. *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) ("[The Court is] constrained to review the reasons the ALJ asserts.") (quoting *Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003)). As a result, the ALJ did not properly explain how these activities contradict Plaintiff's allegations, show that they are transferable or contain a substantial part of Plaintiff's day.

Plaintiff continues that the ALJ improperly considered and reiterated Plaintiff's childcare duties and activities. ECF No. 12 at 8-9. Plaintiff states that performing childcare alone does not mean that Plaintiff can perform basic work activities. ECF No. 12 at 8 (citing *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th. Cir. 2017)). Plaintiff asserts that the ALJ incorrectly asserted Plaintiff's childcare duties. ECF No. 12 at 8. For example, the ALJ stated that Plaintiff has joint custody of his six children and he helps them after school. Tr. 24. However, Plaintiff did not have custody of three of his adult children and Plaintiff is not able to help his children with after school activities multiple times a week. ECF No. 12 at 8; Tr. 59-60. Instead, Plaintiff alleged that his ex-wife assisted his children and the older boys

ORDER OF REVERSAL AND REMAND ~ 16

helped with the children's animals.  ECF No. 12 at 8; Tr. 60.

For similar reasons as previously discussed, the ALJ did not properly explain how these duties contradict the Plaintiff's allegations.  While Defendant provides explanations for the ALJ's alleged inconsistencies, the Court is not able to consider or rely on reasons not provided for in the ALJ's decision.  Simply summarizing Plaintiff's testimony and daily activities and the objective record does not meet the standard.  *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015).  As a result, the ALJ erred by failing to provide clear and convincing reasons to discredit Plaintiff's testimony of daily activities and the objective record.

C. Medical Record

Plaintiff argues that the ALJ did not establish substantial evidence that the medical record contradicted Plaintiff's testimony of symptoms.  ECF No. 12 at 9.  Additionally, Plaintiff asserts that failure to provide objective evidence of symptoms is not a sufficient reason to discredit testimony if it was established that an impairment can reasonably cause the alleged symptoms.  ECF No. 12 at 9-10.

The ALJ noted that the objective findings did not provide "strong support" that Plaintiff's allegations of disabling symptoms and limitations.  Tr. 25.  Plaintiff restated multiple of Plaintiff's visits regarding his strength, flexibility, mobility and test results.  Tr. 25-26.  For example, in March of 2023, Plaintiff strength was five out of five and reflexes pus two with a negative straight leg test.  Tr. 25.  In June of

ORDER OF REVERSAL AND REMAND ~ 17

2023, the ALJ noted that Plaintiff's mood and affect were normal and that his x-rays were negative.  Tr. 25.  Moreover, the ALJ continues to state findings from the medical record but does not specifically state how this contradicts with the Plaintiff's testimony.  The ALJ uses his daily activities to state that this contradicts his symptoms of some of his impairments but does not state how.  Tr. 25. Additionally, the ALJ continues to explain the RFC determination but not any specific inconsistencies.  Tr. 27.

The ALJ failed to specifically identify "*which* testimony she found not credible, and never explained *which* evidence contradicted that testimony."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015).  Summarizing Plaintiff's testimony and the medical record is not enough.  *Brown-Hunter*, 806 F.3d at 494.  Although the Court could reasonably draw inferences from the ALJ's summaries, "the credibility determination is exclusively the ALJ's to make, and [the court's] only to review."  *Brown-Hunter*, 806 F.3d at 494.  As a result, the ALJ failed to provide clear and convincing reasons for discrediting Plaintiff's testimony.  The ALJ committed the same error regarding Plaintiff's daily activities.  Temand is necessary to complete the record.

**II.    The ALJ provided sufficient reasons supported with substantial evidence for finding Shannon Terry, A.R.N.P.'s opinion as unpersuasive.**

ORDER OF REVERSAL AND REMAND ~ 18

Plaintiff alleges that the ALJ improperly considered Shannon Terry, A.R.N.P.'s opinion and was not supported by substantial evidence. ECF No. 12 at 15.

Under 20 C.F.R. § 404.1520c, the ALJ's guidelines for how to consider and articulate medical opinions and prior administrative medical findings are laid out. With these regulations, the ALJ is not required to provide "'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (citations omitted).

The new regulations focus on supportability and consistency when evaluating the persuasiveness of an opinion. *Woods*, 32 F.4th at 791. Supportability "means the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.'" *Woods*, 32 F.4th at 791-92 (quoting 20 C.F.R. § 404.1520c(c)(1)). On the other hand, "consistency means the extent to which a medical opinion is 'consistent ... with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)).

The ALJ did not find Nurse Terry's opinion as persuasive because it was not consistent with the objective medical record. Tr. 29. Nurse Terry opined that Plaintiff "was severely limited as he could not lift at least two pounds or was unable to stand and/or walk, and he could only occasionally reach and handle (Ex. 22F)." Tr. 29. During a physical therapy visit in August of 2024, Plaintiff's "left

ORDER OF REVERSAL AND REMAND ~ 19

knee had 133 degrees of flexion and 5 degrees of extension (Ex. 23F/3)." Tr. 29. This included strengths of four to five on a five-point scale. Tr. 29. Lastly, the ALJ held that Nurse Terry's opinion "lacked strong internal support as it was completed on a checkbox form with a few additions, but it did not foot pain, knee pain, and back pain (Ex. 22F/2)." Tr. 29.

Nurse Terry's medical report consists of three pages. Tr. 1242-44. Nurse Terry stated that Plaintiff has PTSD, anxiety, bilateral foot pain, and memory difficulties. Tr. 1242. His symptoms were reported to be emotional breakdowns, outburst, explosive reactions, anxiety, memory loss, and foot pain and numbness. Tr. 1242. For patient's signs and relevant test results and findings, Nurse Terry listed multiple positive tests, EMG/NCS, and that neuropsych testing was pending. Tr. 1242. Nurse Terry continued that Plaintiff must lie down during the day and elevate his legs. Tr. 1242. Additionally, she stated that regular and continuous work would cause Plaintiff's condition to deteriorate, and it is more probable than not that Plaintiff would miss four or more days per month for a 40-hour week job. Tr. 1242-43. For the explanation, Nurse Terry states that interaction with others and physical activity exacerbates symptoms. Tr. 1243. She marked Plaintiff as severely limited and unable to lift at least 2 pounds or unable to stand and/or walk with manipulative limitations involving upper extremities. Tr. 1243.

Plaintiff alleges that the ALJ's finding that Nurse Terry's opinion lacked strong

ORDER OF REVERSAL AND REMAND ~ 20

support because she used checkboxes was not a sufficient reason. ECF No. 12 at 16. Defendant responds that the ALJ appropriately found Nurse Terry's report as unpersuasive because it relied on Plaintiff's testimony and contradicted with substantial evidence from the record. ECF No. 17 at 16. Defendant responds that the lack of supportability, as defined, is because it lacked supporting explanations and objective medical evidence to her support her claims. ECF No. 17 at 15 (citing 20 C.F.R. § 404.1520c(c)(1).

Nurse Terry's report lacked explanations to support her claims. She provided diagnoses and referred to some testing but did not explain the testing, symptoms, or her findings. The ALJ properly explained that Nurse Terry's opinion lacked support. Tr. 29. Additionally, the ALJ noted that Nurse Terry's opinion was not consistent with record and cited an August 2024 physical therapy session where Plaintiff exhibited motion in his knees consisting of "135 degrees of flexion and 5 degrees of extension in the right knee, and 133 degrees of flexion and 5 degrees of extension in the left knee." ECF No. 17 at 17 (citing Tr. 1247). Also, Plaintiff's strength was a 4 out of 5. Tr. 1247-48. This evidence contradicted Nurse Terry's limitation that Plaintiff could not lift more than two pounds or stand and walk.

Plaintiff is correct that a medical opinion cannot be properly rejected for using a checkbox questionnaire or form. *Ford v. Saul*, 950 F.3d 1141, 1155 (9th

ORDER OF REVERSAL AND REMAND ~ 21

Cir. 2020).  However, the ALJ may reject this type of form if the report does not explain the medical provider's conclusions.  *Ford*, 950 F.3d at 1155.  As was discussed, the ALJ provided sufficient reasons that explained her decision regarding the required considerations.  While the ALJ properly found Nurse Terry's report unsupported and explained the checkboxes as a reason, this was not the only reason.  *Henderson v. Astrue*, 634 F. Supp. 2d 1182, 1194 (E.D. Wash. 2009) (stating that when the ALJ provides other "adequate specific, legitimate reasons constituting substantial evidence" the other insufficient reasons constitute harmless error); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (stating that an error is harmless and does not warrant reversal if there is substantial evidence to support the ALJ's conclusion and the error does not nullify the ALJ's validity of the ALJ's decision).

Even more, the report lacked many details or explanations to support her claims.  Nurse Terry focused on limitations, diagnoses and cited some testing but lacked explanations of the tests, symptoms, or how she came to her conclusions.

Plaintiff assigns error to the ALJ that the ALJ failed to explain further evidence of Plaintiff's limitations and symptoms that supported Nurse Terry's opinion.  ECF No. 12 at 16.  Defendant explains that the EMG study from January 2025 suggested mild neuropathy and mild radiculopathy not nerve root impingement. Tr. 1358-59.  Defendant continues that Nurse Terry recommended

ORDER OF REVERSAL AND REMAND ~ 22

an MRI to investigate possible nerve root impingement but did not make this diagnosis. Tr. 1358.

While the ALJ could have explained this testing, it does not make the ALJ's determination improper or based on incorrect evidence. The ALJ's explanations still stand because the need for additional testing for a possibility of cervical nerve root impingement does not negate the ALJ's consideration of supportability and consistency. In short, the ALJ's explanation is still supported with substantial evidence. Additionally, the ALJ did not err for failing to specifically explain this. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) ("[I]n interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'") (quoting *Black v. Apfel,* 143 F.3d 383, 386 (8th Cir. 1998)).

For these reasons, the ALJ provided sufficient reasons based on the consistency and supportability factors. However, while the ALJ could have elaborated on specific details regarding Nurse Terry's report and these factors, the ALJ did not err here.

**III.    The ALJ only harmlessly erred when she failed to make findings about Plaintiff's request to amend his alleged onset date.**

Lastly, Plaintiff alleges that the ALJ failed to make any findings regarding Plaintiff's requested amendment of his alleged onset date. ECF No. 12 at 18.

ORDER OF REVERSAL AND REMAND ~ 23

Plaintiff states that during his hearing, his attorney requested an amendment to the onset date of disability from March 15, 2021, to October 1, 2022.  ECF No. 12 at 18.  Plaintiff states that the ALJ did not address this in her written decision.  ECF No. 12 at 18.  The ALJ considered Plaintiff's disability status from the original alleged onset date instead.  ECF No. 12 at 18.  Defendant responds that Plaintiff did not allege that this was harmful error.  ECF No. 17 at 19-20.  Defendant states that one small citation and discussion regarding pre-amendment evidence was necessary to consider the entire record and did not result in harmful error or a different outcome.  ECF No. 17 at 19-20.  Moreover, the time frame that Plaintiff alleged his onset of disability was fully considered and properly determined he was not disabled.  ECF No. 17 at 20.  Therefore, this would not change the outcome of the determination.  Plaintiff responds that how the ALJ considered the evidence made the difference.  ECF No. 18 at 10.  In other words, whether this information was evidence of the alleged disabled period or simple background information on the progression of the impairments makes the difference resulting in harmful error.  ECF No. 18 at 10.

The ALJ should have established and explained her findings in her decision regarding the alleged onset date.  However, Plaintiff did not establish that this was harmful error.  The ALJ clearly stated what date the ALJ was using for Plaintiff's disability determination in the decision.  Tr. 17.  Moreover, the ALJ considering

ORDER OF REVERSAL AND REMAND ~ 24

the cited evidence is only one small portion of the decision, it is unlikely that this consideration of evidence made any difference on the ALJ's determination.

Plaintiff requests that this case be remanded for additional administrative proceedings. ECF No. 12 at 2,19. The ALJ did not meet the clear and convincing standard for rejecting Plaintiff's testimony and this requires the ALJ to provide sufficient reasoning with reference to Plaintiff's testimony that contradicts the specific evidence. The district court may not rely on reasons not provided by the ALJ and there are issues to be resolved. Therefore, the record is not fully developed, and further proceedings are appropriate. *Brown-Hunter v. Colvin*, 806 F.3d 487, 496 (9th Cir. 2015) ("Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014)); *Benecke*, 379 F.3d at 593 ("Remand for further administrative proceedings is appropriate if enhancement of the record would be useful."). An order to remand to complete the record is appropriate. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) ("When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits.").

Upon remand, the ALJ shall, reassess accordingly based on this Order, provide clear and convincing reasons with references to Plaintiff's testimony and

ORDER OF REVERSAL AND REMAND ~ 25

relevant medical evidence, conduct the sequential evaluation to issue a new decision with sufficient articulated reasons as provided under 20 C.F.R. § 404.1520c and provide sufficient findings regarding Plaintiff's alleged onset date.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Opening Brief (ECF No. 12) is **GRANTED.**

2. Pursuant to 42 U.S.C. § 405(g), this action is **REVERSED and REMANDED** to the Commissioner for further proceedings consistent with this Order.

The District Court Executive is directed to enter this Order, enter judgment for Plaintiff, furnish copies to counsel, and **CLOSE** this file.

DATED June 8, 2026.



THOMAS O. RICE
United States District Judge

ORDER OF REVERSAL AND REMAND ~ 26